


## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher Sammacicci | : | |
| 148 Center St. | : | CIVIL ACTION |
| Sewell, NJ 08080 | : | |
|       PLAINTIFF, | : | 20      1049 |
| | : | |
|       v. | : | No.: |
| | : | |
| 3M Company | : | JURY TRIAL DEMANDED |
| 3M Center | : | |
| Bldg. 224-5N-40 | : | |
| 2501 Hudson Road | : | |
| Maplewood, Minnesota 55144 | : | |
|       And | : | |
| 3M Occupational Safety LLC | : | |
| 251 Little Falls Drive | : | |
| Wilmington, Delaware 19808 | : | |
|       And | : | |
| Aearo Holding LLC | : | |
| 251 Little Falls Drive | : | |
| Wilmington, Delaware 19808 | : | |
|       And | : | |
| Aearo Intermediate LLC | : | |
| 251 Little Falls Drive | : | |
| Wilmington, Delaware 19808 | : | |
|       And | : | |
| Aearo LLC | : | |
| 251 Little Falls Drive | : | |
| Wilmington, Delaware 19808 | : | |
|       And | : | |
| Aearo Technologies LLC | : | |
| 251 Little Falls Drive | : | |
| Wilmington, Delaware 19808 | : | |
|               DEFENDANTS | : | |

## COMPLAINT-CIVIL ACTION

**COME NOW** the Plaintiff, above-named, by and through his attorney, Henry George, Esq. bringing this Complaint seeking judgment against Defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC, and alleges as follows:

## INTRODUCTION

This action is brought by Plaintiff, Christopher Sammacicci, a decorated veteran of the United States Army and New Jersey Army National Guard who bravely served his country from 2006-2014. Mr. Sammacicci's service to his country included deployment to Iraq. Like his fellow soldiers, Mr. Sammacicci served his country admirably and with the expectation that the companies that provided his equipment, safety products, and arms would provide safe and effective products that complied with applicable safety and government standards. That was not the case for the ear protection provided to Mr. Sammacicci and his fellow service members. For over a decade, 3M sold the military defective and unsafe combat earplugs for use by Mr. Sammacicci and others, exposing our military service members to injuries and increased risks on the battlefield. Shockingly, 3M provided these defective earplugs knowing that the safety devices failed to provide the protection that was advertised and promised to the Armed Forces.

1.   Plaintiff Christopher Sammacicci is an adult individual and citizen of the State of New Jersey, residing at the above captioned address.

2.   Defendant 3M Company is a company or business organization organized and existing under and by virtue of the laws of Delaware, with its principal place of business located at 3M Center, Bldg. 224-5N-40, 2501 Hudson Rd., Maplewood, Minnesota 55144.

3.   Among other things, Defendant 3M Company is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors and respirators, and is one of the largest companies in the United States.

4.   At all times relevant hereto, Defendant 3M acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

5.   Defendant 3M Occupational Safety LLC is a Delaware limited liability company and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

6.   Defendant 3M Occupational Safety LLC is a subsidiary of Defendant 3M.

7.   Prior to the merger of Aearo Holdings LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC with 3M Company and 3M Occupational Safety LLC in 2008, Aearo entities were incorporated in Delaware with a principal place of business in Indiana. Following the merger, the Aearo entities were incorporated in Delaware with a principal place of business in Minnesota and Indiana. The Aearo entities are citizens of Delaware and Minnesota for diversity of citizenship purposes.

8.   Defendant Aearo Holding LLC is a Delaware limited liability company with a principal place of business in Minnesota. Defendant Aearo Holding LLC is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

9.   Defendant Aearo Holding LLC was formerly known as Aearo Holding Corporation.

10. Defendant Aearo Holding LLC is a subsidiary of 3M Company.

3

11. Defendant Aearo Intermediate LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

12. Defendant Aearo Intermediate LLC was formerly known as Aearo Technologies, Inc.

13. Defendant Defendant Aearo Intermediate LLC is a subsidiary of 3M Company.

14. Defendant Aearo LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

15. Defendant Aearo LLC was formerly known as Aearo Corporation.

16. Defendant Aearo LLC is a subsidiary of Defendant 3M Company.

17. Defendant Aearo Technologies LLC is a Delaware limited liability company with a principal place of business in Indiana and is a citizen of Delaware and Minnesota for diversity of citizenship purposes.

18. Defendant Aearo Technologies LLC is a wholly-owned subsidiary of Defendant 3M.

19. At all relevant times and as relevant here, Defendant Aearo Technologies utilized two assumed names: Aearo Company and Aearo Technologies.

## JURISDICTION AND VENUE

20. At all times relevant hereto, Defendant 3M, purposely established significant contacts in Pennsylvania, including but not limited to, registration as a foreign corporation doing business in Pennsylvania, and has carried out, and continues to carry out, substantially continuous and systematic business activities in Pennsylvania.

21. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants have purposely established significant contacts in the Eastern District of Pennsylvania. The Defendants have conducted business in the Eastern District of Pennsylvania; regularly conducted and solicited business in the Eastern District of Pennsylvania; have substantial and continuing contact with the Eastern District of Pennsylvania; and derive substantial revenue from goods used and consumed within the Eastern District of Pennsylvania.

23. Plaintiff's claims arise out of Defendants' purposeful contacts and business conducted within the Eastern District of Pennsylvania.

## FACTS

24. Plaintiff Christopher Sammacicci was a soldier in the United States Army and the New Jersey Army National Guard from 2006 until 2014 when he was honorably discharged.

25. Prior to joining the military, Plaintiff had no signs or symptoms of hearing issues, hearing loss, or tinnitus.

26. Plaintiff attended and successfully completed basic training at Fort Benning, Georgia.

27. Following basic training, Plaintiff received orders to report to Infantry School at Fort Benning, Georgia.

28. Plaintiff was stationed and served with the New Jersey Army National Guard Alpha Company 114th Infantry Division.

29. Plaintiff was issued 3M's Dual-Ended Combat Arms earplugs by the Army's Central Issue Facility at Fort Benning, Georgia.

30. During Plaintiff's deployment and during his pre-deployment training and post-deployment training, the 3M Dual Ended-Combat Arms earplugs were standard issue.

31. Plaintiff was deployed on active duty in Iraq from approximately June 2008 to June 2009.

32. In addition to his deployment, Plaintiff was assigned training assignments within the United States.

33. During his deployment and training missions, small arms, heavy artillery, and rockets were used and discharged in close proximity to Plaintiff.

34. During his deployment, Plaintiff transported approximately 15,000 detainees between Northern Iraq and Southern Iraq. Boeing C-17 military transport aircrafts were used for these missions. These aircrafts were extremely loud and Plaintiff utilized his 3M Dual Ended-Combat Arms earplugs during these missions.

35. During his training and deployment, Plaintiff wore the 3M Dual Ended-Combat Arms earplugs in the field.

36. In January 2020, Plaintiff was diagnosed with tinnitus and hearing loss as a result of using the 3M Dual Ended-Combat Arms earplugs during his military service

37. As a direct and proximate result of the Defendants' conduct, as more fully discussed below, Plaintiff was caused to sustain severe, disabling and catastrophic injuries including, but not limited to, tinnitus, and hearing loss.

38. As a direct and proximate result of Defendants' conduct, Plaintiff has in the past and continues to suffer pain, mental anguish, loss of independence, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, as well as other intangible losses.

39. As a direct and proximate result of Defendant's conduct, Plaintiff has in the past required, continues to require, and in the future will require medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, durable medical equipment and things, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempts to alleviate and/or cure his conditions.

40. As a direct and proximate result of Defendants' conduct, Plaintiff has been prevented and/or limited and will in the future be prevented and/or limited from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings, loss of earnings capacity, and may be permanently impaired.

## THE 3M DUAL-ENDED COMBAT ARMS EARPLUGS

41. The 3M Dual-Ended Combat Arms™ earplugs were developed by Aearo Technologies, Inc., (hereinafter, "Aearo"), a 3M company, which developed, marketed, and sold the Dual-Ended Combat Arms™ earplugs until being acquired by Defendant, 3M Company in 2008.

42. Upon information and belief, by way of consolidation, merger, or asset transfer, Defendant, 3M Company, Inc. entered into an agreement with Aearo and/or its shareholders which amounted to a consolidation of the entities, merger, or de factor merger, by which 3M Company assumed liability for the actions of Aearo, and which permitted 3M Company to

7

continue the operations of Aearo including the continuation of the Dual-Ended Combat Arms™ product line (hereinafter, "The Merger").

43. Upon information and belief, the Merger permitted 3M Company the exclusive right to manufacture the Dual-Ended Combat Arms™ earplugs, permitted 3M Company the exclusive right to distribute Dual-Ended Combat Arms™ earplugs, and permitted 3M Company to have exclusive use of the name Dual-Ended Combat Arms™.

44. Upon information and belief, 3M received and/or had access to all information associated with the Dual-Ended Combat Arms™ ear plugs.

45. 3M acquired both the assets and liabilities of Aearo. Thus, Aearo and 3M are used interchangeably and all allegations against Aearo are directed as a matter of law against 3M Company and vice versa.

46. The Dual-Ended Combat Arms™ earplugs were developed for the specific purpose of providing service members with a single set of earplugs that provide two options for hearing attenuation depending on how they are worn.

47. The earplugs can be worn in two ways, first, the wearer can put the open or "unblocked" position (yellow in ear) to block, or at least significantly reduce, loud impulse sounds associated with military service. This position was designed to allow servicemen to hear quieter noises such as commands spoken by fellow servicemen and approaching enemy combatants. Second, the earplugs can also be worn in a closed or "blocked" position (olive in ear) to block, or at least significantly reduce, all sounds.



Photo depicting Dual-Ended Combat Arms™ earplugs color-coded ends

48. With this design, Aearo/3M won a series of Indefinite-Quantity Contracts ("IQCs") to be the exclusive supplier of selective attenuation earplugs to the U.S. military between 2003 and 2012, and continuing as a non-exclusive provider thereafter.

49. In order to be the exclusive supplier during the relevant years and a continued supplier thereafter, Aearo/3M represented that the Dual-Ended Combat Arms™ earplugs would meet specific performance criteria established by the U.S. Government as a prerequisite for bidding on the IQC for earplugs.

50. At all times, Aearo/3M's performance representations were false; and Defendant knew them to be false. These dangerous defects were known to Aearo/3M in 2000 before submitting a bid in response to the military's Request for Proposal ("RFP").

51. At all relevant times, the Dual-Ended Combat Arms™ earplugs had a dangerous design defect that caused them to imperceptibly loosen in the wearer's ear, thus allowing damaging sounds to enter the ear canal around the outside of the earplug.

52. Specifically, the basal edge of the third flange of the non-inserted end of the earplug is prone to press against some wearers' ear canals and fold back to its original shape, thereby loosening the seal in their ear canals.

53. Because the earplug is symmetrical, the defect exists regardless of which end is inserted into the ear.

54. Aearo/3M learned of this design defect when it completed and/or performed testing of the Dual-Ended Combat Arms™ earplugs.

55. The value and effectiveness of earplugs has been standardized under federal law though a Noise Reduction Rating ("NRR"). The testing and labeling of earplugs such as the Dual-Ended Combat Arms™ earplugs to achieve an NRR is governed by federal regulations promulgated by the Environmental Protection Agency ("EPA") pursuant to the Noise Control Act, 42 U.S.C. §4901 *et seq.* Specifically, 40 C.F.R. §211.206-1 provides:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

56. Further, 40 C.F.R. §211.204-4(e) requires that specific supporting information accompany hearing protection devices sold in the United States.

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing,

such supporting information must be affixed to the bulk container
or dispenser in the same manner as the label, and in a readily
visible location...Instructions as to the proper insertion or
placement of the device.

**FALSE AND MANIPULATED TEST RESULTS**

57.  Employees from Aearo/3M began testing the Dual-Ended Combat Arms™ earplugs in or

around January 2000 at its own laboratory. Aearo/3M selected ten test subjects and intended

to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the

open/unblocked (yellow) end of the Dual-Ended Combat Arms™ earplug inserted; and (3) the

subject's hearing with the closed/blocked (olive) end of the Dual-Ended Combat Arms™ earplug

inserted. This testing was designed to provide data regarding the "NRR" of the Dual-Ended

Combat Arms™ earplugs.

58. Aearo/3M personnel monitored the results of each subject as the test was performed

and could thus stop the test if the desired NRR results were not achieved.

59. Eight of the ten subjects were tested using both the open and closed end of the Dual-

Ended Combat Arms™ earplug.

60. Aearo/3M terminated the January 2000 testing of the closed end of the Dual-Ended

Combat Arms™ earplug because the eight subjects averaged an NRR of 10.9. This was neither

an expected nor a positive score for Aearo/3M.

61. Aearo/3M determined that when the closed, olive end of the earplug was inserted into

the wearer's ear according to standard fitting instructions, the basal edge of the third flange of

the open, yellow end would press against the wearer's ear and fold backwards. When the

inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen.

62. The symmetrical nature of the earplug prevents a proper fit when worn either open (yellow end) or closed (olive end) according to the standard fitting instructions.

63. Aearo/3M personnel determined that a proper fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

64. Aearo/3M completed testing of all ten subjects with the "open" or "unblocked" (yellow end) position of the Dual-Ended Combat Arms™ earplug to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

65. Aearo/3M represented the -2 NRR as a "0" NRR which Aearo/3M has displayed on its packaging since its launch.

66. Aearo/3M falsely promotes "0" NRR as a benefit of the Dual-Ended Combat Arms™ earplug. A showing of "0" means that a serviceman is able to hear fellow soldiers and enemies while still providing some protection. However, the true -2 NRR actually amplifies sound thereby exposing the wearer to harm.

67. After identifying the design defect, Aearo/3M re-tested the olive, closed end of the Dual-Ended Combat Arms™ earplug in February 2000 using manipulated fitting instructions. Aearo/3M personnel used the manipulated instructions to tell the subjects to fold back the yellow flanges on the open end of the Dual-Ended Combat Arms™ earplug before insertion.

68. Using this manipulated fitting procedure, Aearo/3M obtained a "22" NRR on the closed end (olive) of the Dual-Ended Combat Arms™ earplugs.

69. The manipulated instruction, however, was never properly warned by Aearo/3M to servicemen. Aearo/3M never properly warned servicemen that the only potential way to obtain a "22" NRR was to manipulate the Dual-Ended Combat Arms™ earplug by folding the yellow flanges on the opposite end.

70. Aearo/3M never retested the "open" or "unblocked" position (yellow end) of the Dual-Ended Combat Arms™.

## FALSE CERTIFICATION TO THE U.S. MILITARY

71. Aearo/3M knew at the time it bid for the initial IQC that the Dual-Ended Combat Arms™ earplugs had dangerous design defects and did not adequately warn of the defects or adequately warn how to wear the earplugs.

72. Aearo/3M responded to the military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP02000-R-4202.

73. The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

> 2.1.1. Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19
>
> 2.4. Workmanship. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.

> 2.5 Instructions. Illustrated instructions explaining the proper
> use and handling of the ear plugs shall be supplied with each
> unit.

Solicitation No. SP0200-06-R-4202 at 41-42

74. Aearo/3M knew that at the time it made its certifications to the military the Dual-Ended Combat Arms™ earplugs did not comply with the MPID. Specifically, Aearo/3M knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer.

75. Aearo/3M knowingly used the deliberately flawed retest with the manipulated instructions of the closed end (olive) of the earplugs to sell Dual-Ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

76. In addition, nothing in the instructions disclosed that it was necessary to instruct wearers of the Dual-Ended Combat Arms™ earplug to fold back the flanges before inserting the closed end into the ear.

77. Aearo/3M also falsely reported to the U.S. military that the "open" (yellow end) of the Dual-Ended Combat Arms™ earplugs had a "0" NRR. The "0" NRR would allow servicemen to speak to fellow servicemen and hear enemies during combat.

78. Due to the false certifications, Aearo/3M's bid was the prevailing bid which made it the exclusive provider of selective attenuation earplugs to the U.S. military.

79. Since the adoption of the Dual-Ended Combat Arms™ earplugs, the United States military has paid millions of dollars to purchase defective earplugs.

80. Since the adoption of the Dual-Ended Combat Arms™ earplugs, millions of service members, including Plaintiff, Christopher Sammacicci, have relied on the misrepresentations of Aearo/3M in mistakenly believing that they were provided with adequate hearing protection.

81. The military purchased, at a minimum, one pair of 3M's Dual-Ended Combat Arms™ earplugs for each deployed soldier involved in foreign conflicts between 2003-2015.

82. In May 2016, Defendant 3M Company was named in a sealed action alleging that the above described conduct constituted a protracted fraud perpetrated on the United States Military by 3M Company for more than a decade. *See, United States of America ex rel. Moldex-Metric, Inc. v. 3M Company*, United States District Court for the District of South Carolina, Case No. 3:16-1533-MBS.

83. In July 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it fraudulently supplied the United States with defective 3M Dual-Ended Combat Arms™ earplugs.

84. Plaintiff could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at the time the devices failed him or soon thereafter because, at the time of these injuries, the cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action. *See also* 50 U.S.C. §3936.

85. Further, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through its affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the risks associated with the defects in the Dual-Ended Combat Arms™ earplugs.

86. As a result of Defendant's actions, Plaintiff was unaware, and could not have reasonably known or have learned through reasonable diligence that he had been exposed to the defects

and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

## CAUSES OF ACTION

### COUNT I
### DESIGN DEFECT – NEGLIGENCE

87. All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

88. At all times relevant to this action, Defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-Ended Combat Arms™ earplugs with reasonable and due care for the safety and well-being of its users, including Service Members, including Plaintiff and other U.S. military Service Members who used the Dual-Ended Combat Arms™ earplugs.

89. Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

90. Defendants knew that the Dual-Ended Combat Arms™ earplugs would be used by users, including Service Members including Plaintiff.

91. The Dual-Ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

92. When the Dual-Ended Combat Arms™ earplug is inserted into the ear according to standard fitting instructions provided by Defendants, a proper seal is not formed with the ear canal.

16

93. The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some users, including Service Members' ear canals such that dangerous sounds can bypass the earplug altogether, thereby posing serious risk to the user's hearing, unbeknownst to him or her.

94. Upon information and belief, Defendants failed to exercise reasonable and due care under the circumstances and therefore breached this duty in the following ways:

   a. Defendants failed to design the Dual-Ended Combat Arms™ earplugs in a manner that would result in an NRR of "22" when used with the closed, olive end inserted, as promoted and marketed by Defendants and as provided by them in the earplugs' standard fitting instructions;

   b. Defendants' representations also overstated the attenuation benefit provided by the yellow or "open" end of the earplugs. The yellow or open end both attenuated low-level sounds more than as stated by Defendants, and also due to its defective design, failed to provide the non-linear level dependent attenuation protection as represented by Defendants.

   c. Defendants failed to design the Dual-Ended Combat Arms™ earplugs in a manner that would safely prevent against injuries claimed by Plaintiff;

   d. Defendants failed to properly and thoroughly test the Dual-Ended Combat Arms™ earplugs;

   e. Defendant failed to properly and thoroughly analyze the data resulting from testing of the Dual-Ended Combat Arms™ earplugs;

17

f.   Defendants designed, manufactured, distributed, and sold the Dual-Ended Combat Arms™ earplugs without an adequate warning of the significant and dangerous risk of the earplugs;

g.   Defendants designed, manufactured, distributed, and sold the Dual-Ended Combat Arms™ earplugs without providing adequate or proper instructions to avoid the harm that could foreseeably occur because of using the earplugs in the manner the Defendant's standard fitting instructions directed;

h.   Defendants designed, manufactured, distributed, and sold the Dual-Ended Combat Arms™ earplugs even though their risks and dangers outweighed any purported benefit;

i.   Defendants failed to fulfill the standard of care required of a reasonable and prudent manufacture of hearing protection products, specifically products such as the Dual-Ended Combat Arms™ earplugs; and

j.   Defendants negligently continued to manufacture and distribute the Dual-Ended Combat Arms™ earplugs to the U.S. military after Defendants knew or should have known of its adverse effects and/or the availability of safer designs.

k.   Defendants assumed the duty to properly warn of the defects and risks of the Dual-Ended Combat Arms™ earplugs by providing instructions and information related to the benefits and effectiveness of the earplugs, although grossly misleading to the military and users, including Service Members. As such, Defendants were negligent in failing to provide adequate warnings and instructions.

95. Defendants knew or should have known that the defective condition of the Dual-Ended Combat Arms™ earplugs made it unreasonably dangerous to the U.S. military users, including Service Members, who used the earplugs, including Plaintiff.

96. The Dual-Ended Combat Arms™ earplugs were dangerous when used by users, including Service Members, including Plaintiff, who used them with common knowledge of the products' characteristics and according to their common usage.

97. The Dual-Ended Combat Arms™ earplugs were dangerous when used by users, including Service Members, including Plaintiff, who followed the instructions provided by Defendants.

98. Defendants knew or should have known of the defective design at the time the Dual-Ended Combat Arms™ earplugs were used by Plaintiff.

99. At the time the Dual-Ended Combat Arms™ earplugs left the possession of Defendants, the Dual-Ended Combat Arms™ earplugs were in a condition that made them unreasonably dangerous to the users, including Service Members.

100. At the time the Dual-Ended Combat Arms™ earplugs left the possession of Defendants, the Dual-Ended Combat Arms™ earplugs were in a condition that made them unreasonably dangerous to the users, including Service Members.

101. The 3M Dual-Ended Combat Arms™ earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

102. At all relevant times, Plaintiff used the Dual-Ended Combat Arms™ earplugs in the manner in which the earplugs were intended.

103. As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers of the Dual-Ended Combat Arms™ earplugs, Defendants had superior knowledge of the Dual-Ended Combat Arms™ earplugs and owed a duty of care to Plaintiff.

104. It was foreseeable that Defendants' actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to Plaintiff.

105. The Dual-Ended Combat Arms™ earplugs were the proximate cause of Plaintiff's personal injuries—specifically, Plaintiff's hearing loss and tinnitus.

106. Defendants' conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because Defendants designed, manufactured, tested, sold, and distributed the defective Dual-Ended Combat Arms™ earplugs used by Plaintiff.

107. As a direct and proximate result of Defendants' negligence in designing the defective Dual-Ended Combat Arms™ earplugs, Plaintiff suffered serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages alleged herein.

108. As a direct and proximate result of Defendants' negligence, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II
## DESIGN DEFECT – STRICT LIABILITY

109.     All preceding paragraphs of this Complaint are incorporated by reference the same as if fully set forth herein.

110.  Defendants are engaged in the business of designing, manufacturing, and selling the Dual-Ended Combat Arms™ earplugs.

111.  Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

112.  The Dual-Ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

113.  The Dual-Ended Combat Arms™ earplugs are defective in that they fail to contain an adequate warning of the significant and dangerous risks of the earplugs.

114.  The Dual-Ended Combat Arms™ earplugs are defective in that the earplugs contain inadequate and/or improper instructions for use.

115.  The Dual-Ended Combat Arms™ earplugs are defective because their risks and dangers outweighed any purported benefit.

116.  Defendants knew that the defective condition of the Dual-Ended Combat Arms™ earplugs made them unreasonably dangerous to users, including Service Members, who used the device, including Plaintiff.

117.  The Dual-Ended Combat Arms™ earplugs were dangerous when used by an ordinary user who used it as intended to be used, including Plaintiff.

21

118. The Dual-Ended Combat Arms™ earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device, including Plaintiff, because the design of the Dual-Ended Combat Arms™ earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

119. Defendants knew of the Dual-Ended Combat Arms™ earplugs' defective design at the time the earplugs were provided to Plaintiff.

120. At the time the Dual-Ended Combat Arms™ earplugs left Defendants' possession, the Dual-Ended Combat Arms™ earplugs were defective and were in a condition that made them unreasonably dangerous to the users, including Service Members, who used them.

121. At the time the Dual-Ended Combat Arms™ earplugs were used by Plaintiff, the Dual-Ended Combat Arms™ earplugs were defective and were in a condition that made them unreasonably dangerous to the users, including Service Members, who used them.

122. The 3M Dual-Ended Combat Arms™ earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

123. At all relevant times, Plaintiff used the Dual-Ended Combat Arms™ earplugs in the manner in which the earplugs were intended.

124. The Dual-Ended Combat Arms™ earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

125.  Defendants' conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendants designed, tested, manufactured, sold, and distributed the Dual-Ended Combat Arms™ earplugs that caused Plaintiff's hearing loss and tinnitus.

126.  As a direct and proximate result of Defendant's defective design of the Dual-Ended Combat Arms™ earplugs, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

127.  As a direct and proximate result of Defendants' defective design of the Dual-Ended Combat Arms™ earplugs, Plaintiff requires and/or will require more healthcare and service and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT III
### FAILURE TO WARN – NEGLIGENCE

128.      All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

129.  At all times relevant to this action, Defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-Ended Combat Arms™ earplugs with reasonable and due care for the safety and well-being of Users, including Service Members, including Plaintiff, who

23

were subject to and used the Dual-Ended Combat Arms™ earplugs during their service with the U.S. military.

130. Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

131. The Dual-Ended Combat Arms™ earplugs are defective, in part, in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

132. Defendants breach their duty to Plaintiff because they failed to warn, and the Dual-Ended Combat Arms™ earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, of the risk that the Dual-Ended Combat Arms™ earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

133. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-Ended Combat Arms™ earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendants' standard instructions for insertion, but rather the "reconfigured" insertion method requiring the user to fold back the flanges of the opposite end before inserting the plug into the ear.

134. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-Ended Combat Arms™ earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendants' standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

135. Defendants breached their duty to Plaintiff because they failed to warn, and the Dual-Ended Combat Arms™ earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that the Dual-Ended Combat Arms™ earplugs had not bee adequately or properly tested.

136. The warnings and instructions that accompanied the Dual-Ended Combat Arms™ earplugs failed to provide the level of information that an ordinary consumer, including Plaintiff, would expect when using the Dual-Ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

137. Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-Ended Combat Arms™ earplugs, including but not limited to instructions directing the users, including Service Members, to fold back the flanges on the non-inserted end of the earplug before inserting the opposite end of the earplug into the ear, Plaintiff would have heeded the warning and/or instructions.

138. Defendants' failure to warn of the design defect of the Dual-Ended Combat Arms™ earplugs and/or their associated risks and dangers was the proximate cause of Plaintiff's hearing loss and/or tinnitus.

139. As a direct and proximate result of Defendants' failure to warn, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

140. As a direct and proximate result of Defendants' failure to warn, Plaintiff requires and/or will require healthcare and services and did incur medical, health, incidental and related

expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**COUNT IV**
**FAILURE TO WARN – STRICT LIABILITY**

141.     All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

142. Defendants are engaged in the business of designing, manufacturing, and selling the Dual-Ended Combat Arms™ earplugs.

143. Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

144. The Dual-Ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

145. The Dual-Ended Combat Arms™ earplugs are defective and unreasonably dangerous even if Defendants exercised all proper care in the preparation and sale of the product.

146. Defendants knew that the defective condition of the Dual-Ended Combat Arms™ earplugs made them unreasonably dangerous to users, including Service Members, specifically Plaintiff.

147. The Dual-Ended Combat Arms™ earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

148. The Dual-Ended Combat Arms™ earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device, including Plaintiff, because the design of the Dual-Ended Combat Arms™ earplugs allows for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to users, including Service Members, as well as specifically to Plaintiff's hearing in a manner unbeknownst to Plaintiff.

149. Defendants knew or should have known of the defective design at the time the Dual-Ended Combat Arms™ earplugs were provided to Plaintiff.

150. At the time the Dual-Ended Combat Arms™ earplugs left Defendants' possession, the Dual-Ended Combat Arms™ earplugs were defective and were in condition that made them unreasonably dangerous to the users, including Service Members, who used them, including Plaintiff.

151. At the time the Dual-Ended Combat Arms™ earplugs were used by Plaintiff, the Dual-Ended Combat Arms™ earplugs were defective and were in a condition that made them unreasonably dangerous to the users, including Service Members, who used them, including Plaintiff.

152. The Dual-Ended Combat Arms™ earplugs used by Plaintiff were expected to and did reach Plaintiff without substantial change in the condition in which the earplugs were produced, manufactured, sold, distributed, and marketed by Defendants.

153. At all relevant times, Plaintiff used the Dual-Ended Combat Arms™ earplugs in the manner in which the earplugs were intended.

154. The Dual-Ended Combat Arms™ earplugs were defective because Defendants failed to warn, and/or earplugs contained no warnings, or in the alternative, contained inadequate warnings and/or instructions, of the risk that Dual-Ended Combat Arms™ earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

155. The Dual-Ended Combat Arms™ earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendants' standard instructions for insertion, but rather the "reconfigured" insertion method requiring the user to fold back the flanges of the opposite end before inserting the plug into the ear.

156. The Dual-Ended Combat Arms™ earplugs were defective because Defendants failed to warn, and/or the earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendants standard instructions for insertion would not achieve "22" NRR and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

157. The Dual-Ended Combat Arms™ earplugs were defective because Defendants failed to warn, and/or earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that the Dual-Ended Combat Arms™ earplugs had not been adequately or properly tested.

158. The warnings and instructions that accompanied the Dual-Ended Combat Arms™ earplugs failed to provide the level of information that an ordinary consumer, including

Plaintiff, would expect when using the Dual-Ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

159. Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-Ended Combat Arms™ earplugs, including but not limited to instructing users, including Service Members, to fold back the flanges on the non-inserted end of the plug before inserting the opposite end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

160. The Dual-Ended Combat Arms™ earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the design of the earplugs allowed for dangerous sounds to bypass the earplug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

161. Defendants' conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendants designed, tested, manufactured, sold, and distributed the Dual-Ended Combat Arms™ earplugs that caused Plaintiff's hearing loss and/or tinnitus.

162. As a direct and proximate result of Defendants' failure to warn, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

163. As a direct and proximate result of Defendants' failure to warn, Plaintiff requires and/or will requires more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT V
### BREACH OF EXPRESS WARRANTY

164.    All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

165. Through Defendants' public statements, descriptions of the Dual-Ended Combat Arms™ earplugs, and promises relating to the Dual-Ended Combat Arms™ earplugs, Defendants expressly warranted, among other things, that the Dual-Ended Combat Arms™ earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

166. These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-Ended Combat Arms™ earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-Ended Combat Arms™ earplugs); (iii) verbal assurances by Defendants' consumer relations personnel about the safety of the Dual-Ended Combat Arms™ earplugs, which also downplayed the risks associated with the Dual-Ended Combat Arms™ earplugs; and (iv) false, misleading, and inadequate written information and packaging supplied by Defendants.

167. When Defendants made these express warranties, they knew the purpose(s) for which the Dual-Ended Combat Arms™ earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

168. Defendants drafted the documents and/or made statements upon which these warranty claims were based and, in doing so, defined the terms of those warranties.

169. The Dual-Ended Combat Arms™ earplugs do not conform to Defendants' promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which earplugs are used.

170. Plaintiff further alleges that all of the aforementioned written materials are known to Defendants and in their possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendants and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

171. As a direct and proximate result of Defendants' breach of the express warranties, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

172. As a direct and proximate result of Defendants' breach of the express warranties. Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

173.    All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

174. At all times material, Defendants were merchants with respect to the Dual-Ended Combat Arms™ earplugs.

175. Plaintiff was a foreseeable user of the Dual-Ended Combat Arms™ earplugs.

176. At the time Defendants marketed, sold, and distributed the Dual-Ended Combat Arms™ earplugs, Defendants knew of the use for which the Dual-Ended Combat Arms™ earplugs were intended, impliedly warranted the Dual-Ended Combat Arms™ earplugs to be fit for a particular purpose, and warranted that the Dual-Ended Combat Arms™ earplugs were of merchantable quality and effective for such use.

177. Defendants knew, or had reason to know, that Plaintiff would rely on Defendants' judgment and skill in providing the Dual-Ended Combat Arms™ earplugs for their intended use.

178. Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Dual-Ended Combat Arms™ earplugs were of merchantable quality, safe, and effective for their intended use.

179. Contrary to such implied warranties, the Dual-Ended Combat Arms™ earplugs were neither of merchantable quality, nor safe or effective for their intended use, because the Dual-

Ended Combat Arms™ earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-Ended Combat Arms™ earplugs were used.

180. The Dual-Ended Combat Arms™ earplugs were defectively designed and manufactured and were distributed and sold without reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-Ended Combat Arms™ earplugs to users, including Service Members, including Plaintiff.

181. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

182. As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII
## FRAUDULENT MISREPRESENTATION

183.     All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

184. Defendants falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-Ended Combat Arms™ earplugs had been properly tested and were free from all defects.

185. Defendants falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-Ended Combat Arms™ earplugs functioned properly and as promoted with the closed side having an NRR of 22 and the open side having an NRR of 0.

186. Defendants intentionally manipulated testing of the Dual-Ended Combat Arms™ earplugs, resulting in false and misleading NRRs and improper fitting instructions.

187. The representations made by Defendants were, in fact, false.

188. When said representations were made by Defendants, Defendants knew the representations to be false and willfully, wantonly and recklessly disregarded whether the representations were true.

189. These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff and the public in general and were made with the intent of inducing Plaintiff and the public in general to recommend, purchase, and/or use the Dual-Ended Combat Arms™ earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff.

190. At the time the aforesaid representations were made by Defendants, and at the time Plaintiff used the Dual-Ended Combat Arms™ earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

191. In reliance upon said representations, Plaintiff was induced to and did use Dual-Ended Combat Arms™ earplugs, thereby sustaining severe and permanent injuries.

34

192. Defendants knew or should have known that the Dual-Ended Combat Arms™ earplugs had not been sufficiently tested, were defective in nature, and/or lacked adequate and/or sufficient warnings and instructions.

193. Defendants knew or should have known that the Dual-Ended Combat Arms™ earplugs had a potential to, could, and would cause severe and grievous injury to users, including Service Members, of said product.

194. Defendants brought the Dual-Ended Combat Arms™ earplugs to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

195. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered injuries and damages as alleged herein.

196. As a direct and proximate result of the foregoing acts and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VIII
## FRAUDULENT CONCEALMENT

197.      All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

198. At all times relevant, Defendants misrepresented the safety and efficacy of the Dual-Ended Combat Arms™ earplugs for their intended use.

199. Defendants knew or were reckless in not knowing that their representations were false.

200. In representations to Plaintiff, Defendants fraudulently concealed and intentionally omitted the following material information:

      a.  that testing of the Dual-Ended Combat Arms™ earplug was flawed;

      b.  that testing of the Dual-Ended Combat Arms™ earplug was deliberately manipulated;

      c.  the amount of hearing protection provided by the Dual-Ended Combat Arms™ earplug;

      d.  that the standard instructions for use would not provide the promised hearing protection;

      e.  that Defendants were aware of the defects in the Dual-Ended Combat Arms™ earplug;

      f.  that the Dual-Ended Combat Arms™ earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

      g.  that the Dual-Ended Combat Arms™ earplug was designed defectively;

      h.  that the Dual-Ended Combat Arms™ earplug was designed negligently; and

      i.  that the Dual-Ended Combat Arms™ earplug was designed improperly.

201. Defendants were under a duty to disclose to Plaintiff the defective nature of the Dual-Ended Combat Arms™ earplugs.

202. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-Ended Combat Arms™ earplugs, including Plaintiff, in particular.

203. Defendants' concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-Ended Combat Arms™ earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the Dual-Ended Combat Arms™ earplug, and actions thereon, and to cause him or her to purchase and/or use the product. Defendants knew that Plaintiff had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Dual-Ended Combat Arms™ earplugs, as set forth herein.

204. Plaintiff reasonably relied on facts revealed, which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

205. As a direct and proximate result of the foregoing concealments and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered injuries and damages as alleged herein.

206. As a direct and proximate result of the foregoing concealments and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

207.     All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

208. Defendants had a duty to represent to Plaintiff and the public in general the truth of the risks and harms associated with the Dual-Ended Combat Arms™ earplugs as well as truth of their efficacy.

209. Defendants represented to Plaintiff and the public in general that the Dual-Ended Combat Arms™ earplugs had been properly tested and found to be effective.

210. Defendants represented to Plaintiff and the public in general that the instructions for use of their Dual-Ended Combat Arms™ earplugs were proper and adequate and would result in the promoted and advertised NRR.

211. The representations made by Defendants were, in fact, false.

212. Defendants breached their duty by falsely representing to Plaintiff and the public in general that the Dual-Ended Combat Arms™ earplugs had been properly tested and found to be effective when Defendants knew or should have known that the Dual-Ended Combat Arms™ earplugs had not been properly or adequately tested, and Defendants had manipulated the results of testing.

213. Defendants breached their duty by falsely representing to Plaintiff and the public in general that the Dual-Ended Combat Arms™ earplugs had been properly tested and found to be effective when Defendants knew or should have known that the design of the Dual-Ended Combat Arms™ earplugs was defective.

214. Defendants breached their duty by falsely representing to Plaintiff and the public in general that the instructions for use of their Dual-Ended Combat Arms™ earplugs were proper and adequate and would result in the promoted and advertised NRR when Defendants knew that these statements were false.

215. Defendants were aware that their testing procedures were unlawfully manipulated.

216. Defendants were aware that their fitting instructions were not adequate or proper.

217. Defendants failed to exercise ordinary care in the representation of the Dual-Ended Combat Arms™ earplugs during their manufacturing, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendants negligently misrepresented the Dual-Ended Combat Arms™ earplugs' safety and efficacy.

218. As a result of the foregoing negligent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

219. As a direct and proximate result of the foregoing negligent misrepresentations, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests

compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees,

and such further relief as the Court deems equitable and just.

## COUNT X
## FRAUD AND DECEIT

220.      All preceding paragraphs of this Complaint are incorporated by reference the

same as though set forth fully herein.

221. Defendants conducted unlawful and improper testing on the Dual-Ended Combat

Arms™ earplugs.

222. As a result of Defendants' unlawful and improper testing, Defendants blatantly and

intentionally distributed false information that overstated the amount of hearing protection

provided by the Dual-Ended Combat Arms™ earplugs.

223. As a result of Defendants' unlawful and improper testing, Defendants intentionally

omitted and misrepresented certain test results to Plaintiff.

224. Defendants had a duty when disseminating information to the public to disseminate

truthful information and a parallel duty not to deceive the public and Plaintiff.

225. The information distributed to Plaintiff by Defendants contained material

representations of fact and/or omissions concerning the hearing protection provided by the

Dual-Ended Combat Arms™ earplugs.

226. These representations were all false and misleading.

227. Upon information and belief, Defendants intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-Ended Combat Arms™ earplugs.

228. It was the purpose of the Defendants in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-Ended Combat Arms™ earplug and induce the public and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-Ended Combat Arms™ earplugs.

229. Defendants made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-Ended Combat Arms™ earplugs were fit and safe for use.

230. These representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

231. These representations and others made by Defendants were made with intention of deceiving and defrauding Plaintiff, were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase and/or use the Dual-Ended Combat Arms™ earplugs.

232. Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-Ended Combat Arms™ earplugs to the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

233. Defendants willfully and intentionally failed to disclose material facts regarding the dangerous and serious safety concerns of the Dual-Ended Combat Arms™ earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Dual-Ended Combat Arms™ earplugs.

234. Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendants and purchase, use, and/or rely on the Dual-Ended Combat Arms™ earplugs.

235. Plaintiff did in fact rely on and believe the Defendants' representations to be true at the time Defendants were made and was thereby induced to use and rely on the Dual-Ended Combat Arms™ earplugs.

236. At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-Ended Combat Arms™ earplugs.

237. Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

238. Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-Ended Combat Arms™ earplugs, Plaintiff would not have used and/or relied on the Dual-Ended Combat Arms™ earplugs.

239. Defendants' aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

240. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages alleged herein.

241. As a direct and proximate result of the foregoing acts and omissions, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT XI
### GROSS NEGLIGENCE

242.    All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

243. The wrongs committed by Defendants as set forth herein were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow the imposition of punitive damages (and which Plaintiff seeks, as set forth below).

244. Such punitive damages are appropriate given Defendants' conduct, as further alleged herein, which includes the failure to comply with applicable guidelines and standards, including but not limited to ANSI, OSHA and MPID guidelines and standards, which recklessly caused substantial injuries to Plaintiff (or, when viewed objectively from Defendants' standpoint at the

time of the conduct, involved an extreme degree of risk considering the probability and

magnitude of the potential harm to others), of which Defendants were actually, subjectively

aware of the risks involved, but nevertheless proceeded with conscious indifference to the

rights, safety, or welfare of others, or included a material representation that was false, with

Defendants knowing that it was false or with reckless disregard as to its truth and as a positive

assertion, with the intent that the representation is acted on by Plaintiff.

245. Plaintiff relied on Defendants' representations and/or omissions and suffered injuries

as a proximate result of this reliance.

246. Plaintiff seeks to assert claims for punitive damages in an amount within the

jurisdictional limits of the Court, as set forth below.

247. Plaintiff also alleges that the acts and omissions of Defendants, whether taken

singularly or in combination with others, constitute gross negligence that proximately caused

the injuries to Plaintiff. In that regard, Plaintiff seeks punitive damages in amounts that would

punish Defendants for their conduct and that would deter other manufacturers from engaging

in such misconduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and requests

compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees,

and such further relief as the Court deems equitable and just.

## **PUNITIVE DAMAGES**

248.        All preceding paragraphs of this Complaint are incorporated by reference the

same as though set forth fully herein.

44

249. Defendants have acted willfully, wantonly, with an evil malice, and recklessly in one or more of the following ways:

      a.  By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-Ended Combat Arms™ earplugs;

      b.  By concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-Ended Combat Arms™ earplugs;

      c.  By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-Ended Combat Arms™ earplugs; and

      d.  By falsely representing the dangerous and serious health and/or safety concerns of the Dual-Ended Combat Arms™ earplugs to the public at large, and Plaintiff in particular.

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

250.      All preceding paragraphs of this Complaint are incorporated by reference the same as though set forth fully herein.

251. Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-Ended Combat Arms™ earplugs were defective and/or caused Plaintiff's injuries.

252. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-Ended Combat Arms™ earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to the Plaintiff.

253. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

254. Furthermore, the running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

255. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects in the Dual-Ended Combat Arms™ earplugs.

256. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff that their Dual-Ended Combat Arms™ earplugs were the cause of Plaintiff's injuries.

257. Through their ongoing affirmative misrepresentations and omissions, Defendants' committed continual tortious and fraudulent acts.

258. As a result of Defendants' actions, Plaintiff was unaware, and could not reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

259. Through Defendants' affirmative misrepresentations and omissions, pertaining to the safety and efficacy of the Dual-Ended Combat Arms™ earplugs, Plaintiff was prevented from

discovering this information sooner because Defendants misrepresented and continued to misrepresent the defective nature of the Dual-Ended Combat Arms™ earplugs.

260. Additionally, pursuant to the Service Members Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations or statute of repose applicable herein. *See* 50 U.S.C. § 3936.

261. The government contractor defense is not applicable in this case because the feature of the product claimed by Plaintiff to be defective—namely, the stem of the Dual-Ended Combat Arms™ earplugs that is too short to provide adequate noise reduction for users—was not manufactured, designed, marketed, or sold in accordance with reasonably precise specifications approved by the United States, therefore not allowing the equipment to conform to such specifications. Further, and most egregiously, instead of warning the United States about the dangers in the use of the equipment they knew about, Defendants instead manipulated their testing and marketing so as to conceal such dangers from the United States and from Service Members, such as Plaintiff, who would ultimately use the product.

262. Further, the combatant activities defense is also not applicable in this case. Defendants designed the Dual-Ended Combat Arms™ earplugs in a laboratory far removed from the battlefield and supplied the earplugs to United States Service Members and civilians for over a decade, regardless of wartime. The procurement agreements between Defendants and the United States military provided only general guidelines as to the Dual-Ended Combat Arms™ earplugs. Defendants decided how to design and test the Dual-Ended Combat Arms™ earplugs and the United States military deferred to Defendants' decisions. Further, the Dual-Ended

Combat Arms™ earplugs were designed by Defendants based on technology that was commercially available, prior to any contracts with the United States military.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

i.   That process issue according to law;

ii.  That Defendants be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiff and against Defendants for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

iii. Pain and suffering (past and future);

iv.  Wage loss (past and future);

v.   Loss of earnings and loss of earning capacity;

vi.  Medical expenses (past and future);

vii. Loss of enjoyment of life (past and future);

viii. Mental anguish and distress (past and future);

ix.  Disfigurement (past and future);

x.   Physical impairment (past and future);

xi.  Awarding Plaintiff their costs and expenses in this litigation, including, but not limited to expert fees and reasonable attorneys' fees;

xii. Punitive or exemplary damages in such amounts as may be proven at trial; and

xiii. Awarding Plaintiff such other and further relief as many be just and proper.

Respectfully Submitted,

Law Office of Gregory J. Pagano, P.C.

By:

HENRY GEORGE, ESQUIRE
ID No. 322481
1315 Walnut St. 12th Floor
Philadelphia, PA 19107
Attorney for Plaintiff, Christopher Sammacicci

February 24, 2020